UNITED STATES of America ex rel.
Guiseppe LO PICCOLO, Petitioner-
Appellant,

v.

Hon. J. Edwin LaVALLEE, Warden of
Auburn State Prison, Auburn, New
York, Respondent-Appellee.

No. 304, Docket 30651.

United States Court of Appeals
Second Circuit.

Argued Jan. 17, 1967.

Decided May 5, 1967.

Phylis Skloot Bamberger, New York
City (Anthony F. Marra, New York City,
on the brief), for petitioner-appellant.

Brenda Soloff, Asst. Atty. Gen., New
York City (Amy Juviler, Asst. Atty.
Gen., Samuel A. Hirshowitz, First Asst.
Atty. Gen., and Louis J. Lefkowitz, Atty.
Gen. of the State of New York, New
York City, on the brief), for respondent-
appellee.

Before MEDINA, ANDERSON and
FEINBERG, Circuit Judges.

MEDINA, Circuit Judge:

On March 4, 1961 the relator and ap-
pellant Lo Piccolo had driven by automo-
bile to a street in Manhattan where he
expected his mistress to pass. Taking a
knife from the car he waited for her and
stabbed her to death. They had quar-
relled over the fact that the mistress
had left him and had threatened to return
to the Dominican Republic with their
child. At the time of his arrest relator
made a full confession. After his indict-
ment for first degree murder, four law-
yers were assigned to represent him, one
of whom (Cosentino) spoke fluent Italian
including the Sicilian dialect. Upon his
plea of guilty to second degree murder
he was sentenced to imprisonment for
from 20 years to life. The circumstances
under which the plea was entered were
thoroughly explored at a three-day hear-
ing in a *coram nobis* proceeding conduct-
ed, according to New York law, by the
sentencing judge, Schweitzer, J. The
sole questions before us are whether
Chief Judge Foley properly denied a fur-

ther similar hearing and whether we should reverse his finding that the plea was voluntary and not coerced.

While Lo Piccolo had resided in the United States for 12 years before his arrest, he claimed not to understand English. Perhaps for this reason he requested the assignment of Sylvester Cosentino who had conferred with him on March 6 and 27, 1961 at the City Prison. On this record there is no doubt that relator and Cosentino understood one another perfectly. On April 13, 1961 Cosentino and three other lawyers were assigned to defend relator. The three other lawyers did not speak Italian.

At the time of the plea on April 18, 1961 the death sentence was mandatory on conviction of first degree murder in New York. On a prior occasion Cosentino had explained the obvious advantage of a second degree plea which offered the prospect of imprisonment from 20 years to life, with the possibility of parole board action in about 13 years as opposed to death in the electric chair. On April 18, 1961 all the four lawyers were present in court, also the Official Italian Interpreter Miss Louise Montini. After the presiding judge inquired as to the possibility of a plea, the lawyers and relator went into the judge's anteroom where they conferred for half an hour. At this conference Miss Montini was not present. After a careful scrutiny of the 125 pages of testimony taken at the coram nobis hearing, we are convinced that the greater part of the time at the anteroom conference was consumed in discussing the circumstances of the stabbing, all of which indicated the substantial likelihood of a first degree conviction. After having the alternatives explained to him, relator agreed to enter the plea of guilty to second degree murder. The conference was followed by a further conference at the bench, which was not reported, and by a close interrogation of relator by the presiding judge, through the Official Italian Interpreter, who found no difficulty whatever in communicating with relator. It is not disputed that all four lawyers recommended to relator that he enter the plea of guilty to second degree murder.

It is perhaps not surprising that, after obtaining the advice of several of the other inmates of the prison in which he was incarcerated, relator sought to retain a different lawyer and to withdraw his plea. Nothing came of this, however, as the lawyer refused to serve.

 Relator testified at the coram nobis hearing that the lawyers had assured him he would receive a sentence of "two years, or something like that," that he was dizzy when the judge interrogated him and did not understand the interpreting by Miss Montini because she spoke "grammatical Italian" rather than the Sicilian dialect. This testimony was rejected by Justice Schweitzer and by Chief Judge Foley. We see no reason to disturb the findings. Nor do we see any impropriety or error in the conduct of the coram nobis by the judge who accepted the plea and sentenced relator. There was nothing unusual about the case and not a single circumstance to indicate that some other judge should have been assigned.

██ The claim of undue haste is not borne out by the record. The subject of the plea was raised by Mr. Cosentino in March. On arraignment the trial judge opened the subject doubtless because the undisputed circumstances surrounding the fatal stabbing indicated that such a plea might be acceptable both to the defendant Lo Piccolo and to the People. There were several conferences with relator, as above indicated, and he decided to follow the advice of his lawyers.

██ Since all material and relevant testimony had been adduced and given thorough consideration at the coram nobis proceeding, there was no occasion for a further hearing before Chief Judge Foley. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Phylis Skloot Bamberger, representing the Legal Aid Society, has made a valiant effort on relator's behalf and we are grateful to her for this.

Affirmed.